UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STAES OF AMERICA

     -vs-                                                                24-MR-6082FPG
                                                                            24-MJ-4013

TIMOTHY JACKSON, JR.,
                Defendant.
_____

## GOVERNMENT'S RESPONSE TO DEFENDANT'S APPEAL OF THE MAGISTRATE JUDGE'S DETENTION ORDER

The United States of America, by and through its attorney, Trini E. Ross, United States Attorney for the Western District of New York, and Robert A. Marangola, Assistant United States Attorney, of counsel, hereby responds to the defendant Timothy Jackson, Jr.'s appeal of Magistrate Judge Payson's Detention Order. The United States urges this Court to uphold the Magistrate's Detention Order because there are no condition or combination of conditions that would reasonably assure the safety of the community if Jackson were to be released.

## PROCEDURAL HISTORY

On January 17, 2024, local and federal law enforcement executed over a dozen search warrants in connection with the take-down of a wiretap investigation targeting the narcotics distribution organization run by defendant Timothy Jackson, Jr. As described more fully below, the searches netted cocaine, fentanyl, firearms, cash, and paraphernalia for distributing narcotics. At the time of the search warrants, the defendant, a two-time convicted felon, was taken into custody after exiting the master bedroom at his residence at

45 Willmont Street in the City of Rochester. There was a 9mm handgun next to a magazine loaded with 7 rounds of 9mm ammunition on the floor in the closet of that master bedroom.

On January 22, 2024, in order to insure the defendant was not released from custody, the defendant, along with Gary Fuller a/k/a "G', Amarilis Diaz a/k/a "Amy", Shawnle McClary, Radhames Candelario-Lpez, Felicia Collins a/k/a "keisha Brown" a/k/a "Keisha", Shamar Anderson a/ka/ "Zay", Javier Davila a/k/a "Javi", and Donde Lindsay a/k/a "Dundee", was charged in federal court by a 95-page Criminal Complaint under Magistrate No. 24-MJ-4013 with Conspiracy to Possess with Intent to Distribute and to Distribute 5 kilograms or more of cocaine and 400 grams of more of fentanyl), Possession of a Firearm as a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1), and Possessing Firearms in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A). *See* Dkt. #1. At his initial appearance that same day, the government moved to detain the defendant on both dangerousness as well as risk of flight.

Detention Hearing

A detention hearing was conducted February 2, 2024 before Magistrate Judge Payson.[1] The government argued that detention was necessary in order to ensure the safety of the community, and sought detention under 18 U.S.C. § 3142(f)(1)(A) (because the Criminal Complaint charges two crimes of violence), (f)(1)(B) (because Jackson is facing a maximum sentence of life imprisonment on the narcotics offense and § 924(c) charge), (f)(1)(C) (because Jackson is facing a maximum sentence of 10 years or more on a felony drug

---

[1] The transcript of the detention hearing is filed at Dkt. #97.

charge), (f)(2)(A) (because Jackson poses a serious risk of flight), and (f)(2)(B) (because there is a serious risk that Jackson would obstruct justice or attempt to threaten or intimidate a potential witness).  Dkt. #97 at 2-3. The government thereafter provided a detailed proffer of the facts and circumstances of the investigation, discussed some of the evidence outlined in the Criminal Complaint, and proffered regarding the factors under 18 U.S.C. § 3142(g). Dkt. #97 at 3-19.  At the conclusion of the detention hearing, Magistrate Judge Payson stated, "I think the government has, frankly, has a very strong case for detention[.]" Dkt. #97 at 30. Nonetheless, the Court reserved decision and requested to review the recording of a wiretap call in which the defendant made comments that the government contended were a threat to a worker if she quitted working for the defendant's organization.  Dkt. #97 at 30-31.

Magistrate Payson's Decision

On March 6, 2024, Magistrate Judge Payson issued an oral decision, finding that there were no conditions or combination of conditions that would reasonably assure the safety of the community, citing, among other things, the defendant's felony criminal history, including violating parole, as well as noting the government's case "appears to be a very strong case and include[s] very strong evidence pertaining to Mr. Jackson[,]" including evidence of not only "Jackson's involvement in the conspiracy[,] but significantly, for this detention hearing, his control over it and his direction of those who work in various roles in the conspiracy." Dkt. #95 at 8, 10, 13-15. [2]

---

[2] The transcript of the oral decision and proceedings conducted March 6, 2024 is filed at Dkt. #95. While granting the motion to detain on dangerousness, Judge Payson denied the government's motion as to flight. Dkt.# 95, at 15.

Appeal

On June 3, 2024, the defendant filed an appeal of the Magistrate's Detention Order. Dkt. #120. For the reasons set forth below, the government urges the Court to uphold the order of detention.

## APPLICABLE LAW

18 U.S.C. § 3145(a)(1) permits a party to seek review from the District Court of a release order issued by a Magistrate Judge. The District Court reviews the Magistrate Judge's detention decision *de novo*. *United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985). In making its findings, the District Court need not defer to the Magistrate Judge's findings, but should reach its own conclusion on the application. *Id.* In conducting its *de novo* review, the District Court may rely on the transcript of proceedings below, take additional evidence in conjunction with the prior proceedings, or conduct a new hearing. *United States v. Colombo*, 777 F.2d 96, 98 n. 1 (2d Cir. 1985); *Leon*, 766 F.2d at 80.

As relevant here, 18 U.S.C. § 3142(e) mandates a judicial officer to order a defendant detained if no conditions will reasonably assure her appearance and/or the safety of the community. After the government moves for detention, the court must undertake a two-step inquiry. *United States v. Fredmond*, 837 F.2d 48, 49 (2d Cir. 1988), citing *United States v. Shakur*, 817 F.2d 189 (2d Cir. 1987). It must first determine (1) by a preponderance of the evidence that the defendant presents a risk of flight or (2) by clear and convincing evidence that the defendant poses a danger to any other person and the community. *See United States v. Jackson*, 823 F.2d 4, 5 (2d Cir. 1987); *Fredmond*, 837 F.2d at 49. After making this determination, the

court must then determine if any condition or combination of conditions of release will protect the safety of the community and reasonably assure the defendant's appearance at trial. *Id*.

There is a rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community" where there is probable cause that a defendant committed "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act." 18 U.S.C. § 3142(e)(3)(A).  When the presumption is triggered, the defendant bears the burden of production to rebut the presumption by coming forward with evidence that the defendant does not pose a risk of flight or present a danger to the community.  *United States v. English*, 629 F.3d 311, 319 (2d Cir. 2011); *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001).  "Satisfying the burden of production does not eliminate the presumption favoring detention; it 'remains a factor to be considered among those weighed by the district court.'" *English*, 629 F.3d at 319, quoting *Mercedes*, 254 F.3d at 436.

When deciding whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, the court must consider the factors listed in Section 3142(g).  These factors include: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, involves a crime of violence, a controlled substance, or a firearm; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court

proceedings; and (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal, state, or local law; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. *Id.*

## **ARGUMENT**

A. <u>Nature and Circumstances of the Offenses: Armed Fentanyl and Cocaine Trafficking</u>

Taking the § 3142(g) factors in turn, (1) the nature and circumstances of the offenses support detention.  The circumstances of the charges, which are detailed in the Criminal Complaint and summarized at the detention hearing (*see* Dkt. #97 at 3-5), are also serious. The defendant is running a narcotics trafficking organization selling thousands of bags and capsules of cocaine and fentanyl at drug houses on Angle Street in the City of Rochester. These drug houses are guarded by firearms, barricaded entrances, and surveillance cameras. As this Court is well-aware, fentanyl and cocaine trafficking, especially when combined with illegal firearms possession, are plainly serious.  The first (g) factor also requires the court to specifically consider whether the offense is a crime of violence, and involves a controlled substance, or a firearm. 18 U.S.C. § 3142(g)(1). This case involves all three: the crimes of being a felon in possession of firearms and possession of firearms in furtherance of a drug trafficking crime are both crimes of violence, and for good reason. Felons in possession of firearms, and drug dealers in possession of firearms, are dangerous combinations. In short, the offenses involve multiple controlled substances, multiple firearms, and crimes of violence. Accordingly, the first of the (g) factors weighs heavily in favor of detention.

B.  Weight of the Evidence Against Defendant: Strong

Next, the court considers the weight of the evidence against the defendant. 18 U.S.C. § 3142(g)(2). In set forth in the Criminal Complaint, the evidence against the defendant is strong, and supports detention.  *See* Dkt. #1; *see also* Dkt. #97, at 5-14. The evidence against the defendant includes, among other things, wiretap calls, surveillance (live and pole camera), controlled purchases of narcotics, and search warrant evidence.

The wiretap evidence includes calls in which Jackson directs workers about how to conduct the drug operation so that they do not get caught by police, referencing the terms "bags", "camera", "board", and even explicitly stating "cocaine".

The surveillance of the defendant includes live surveillance of the defendant by police officers, pole camera footage, GPS data from trackers on vehicles used by this defendant and other members of the conspiracy – all showing him either entering and leaving drug locations, meeting mid-level distributors to sell them narcotics, or entering and leaving stash/processing locations.

There are controlled purchases from mid-level narcotics traffickers in which an informant would contact the mid-level distributor to obtain cocaine, the distributor would then contact Jackson (which was recorded on the wiretap), and then meet up with Jackson to be supplied the larger quantity of cocaine (surveilled by officers), and then sell the narcotics

to the informant.  That does not include the dozens of confidential informant buys of narcotics from drug houses on Angle Street.

The search warrants netted evidence from the drug houses, coconspirators' residences, and the residence and vehicles of the defendant himself.  With respect to the drug houses on Angle Street, law enforcement seized hundreds of bags and/or capsules of cocaine and fentanyl, multiple loaded firearms, hundreds of new/unused bags and capsules for packaging cocaine and fentanyl for sale, and cash. For example, at the drug house at 96 Angle Street, law enforcement observed surveillance cameras, 500 purple capsules of cocaine, over 800 purple capsules of fentanyl, a loaded .25 caliber handgun, and over $1,000 in U.S. currency. At the drug house at 49 Angle Street, there was another surveillance camera system, over 800 capsules of cocaine, a loaded 9mm pistol with a defaced serial number, and new/unused bags for packaging narcotics for sale. At the defendant's residence at 45 Willmont Street, the defendant and a female exited the master bedroom after being called out by the SWAT team. On the closet floor of that master bedroom, police found a 9mm handgun inches away from the loaded magazine, a money counter, and over $20,000 in U.S. currency (which included buy money that a confidential informant paid mid-level distributor Donde Lindsay for cocaine the day before (*see* Dkt. #1, at 91-92)). In Jackson's City of Rochester coat, there were keys which operated the door locks at 45 Willmont Street, 49 Angle Street, and 19 Angle Street (which had been used previously as a drug house by Jackson), as well as the Chevy Tahoe that Jackson was observed operating throughout the investigation. Inside the Tahoe, there were hundreds of new and unused capsules identical to the ones utililzed at the drug houses and utilized by Jackson's organization to sell narcotics. Law enforcement also located

the cell phone that Jackson was intercepted making calls in furtherance of running his drug operation between October 2023 and the take-down on January 17, 2024.

Accordingly, the government's case against the defendant is quite strong and, therefore, as with factor (1), factor (2) weighs heavily in favor of detention.

## C.  Defendant's History: Prior Violent Felony and Drug Trafficking Convictions

The next factor, the history and characteristics of the defendant, also supports detention. 18 U.S.C. §3142(g)(3). Jackson is 46 years old and has multiple felony convictions, according to the Pretrial Services Report. His first felony conviction, in April 2000, was for Attempted Criminal Possession of a Controlled Substance in the Third Degree (Intent to Sell) for which he was sentenced to 1 year in jail. That conviction appears to have satisfied multiple other felony drug charges, some of which were pending at the time the defendant committed the conduct underlying the April 2000 felony drug conviction, or which were committed while that charge itself was pending. In 2002, the defendant pled guilty to Attempted Resisting Arrest in satisfaction of an Assault charge. In 2003, the defendant and five other Plymouth Rock gang members drove the defendant's van, stopped in front of a home on Shelter Street, and fired multiple rounds from multiple firearms into the residence while there were people inside. Two of the men were wearing bullet-proof vests. The defendant pled guilty to over a dozen felony weapons offenses, as well as Reckless Endangerment, and was sentenced to 15 years imprisonment.  Within six months of being released to parole in 2016, he violated his parole when he was driving drunk on May 30, 2016 before again being paroled until February

2022. While on parole, he was engaged in the activity for which he is charged before this Court.

The government submits that, on balance, any family support or ties to the district are outweighed by the defendant's prior felony weapons and drug trafficking history. The defendant's persistent refusal to stop selling drugs and arming himself with illegal firearms (even after serving 15 years in prison) demonstrates that he is a recidivist drug trafficker, illegal firearms possessor and, therefore, a significant danger to the community. There is a strong likelihood that he would, if given the chance, return to his chosen criminal activity if released. Therefore, his history and characteristics support detention.

### D. Nature and Seriousness of Danger Posed by Defendant's Release

The defendant constitutes a serious danger to the community if released for several reasons. First, he is presumed to be a danger based on the probable cause that he has committed the narcotics and firearms felonies with which he is charged, as set forth in the Criminal Complaint. *See* 18 U.S.C. 3142(e).[3] Second, the "harm to society caused by narcotics trafficking is encompassed within Congress' definition of 'danger'" in the Bail Reform Act. *See United States v. Leon*, 766 F.3d 77 (2d Cir. 1985). Third, as noted above, the government's proffer demonstrates that the defendant is a recidivist, armed leader of a drug trafficking organization employing multiple individuals who has again returned to armed drug trafficking even after serving a 15-year prison sentence for spraying a house on Shelter Street

---

[3] Magistrate Payson determined that the government is entitled to rely on the presumption of § 3142(e) because the charges against the defendant set forth in the Criminal Complaint were supported by probable cause. Dkt. #95, at 3-4.

with bullets in 2003. Fourth, the defendant is selling fentanyl, a lethal drug that has resulted in numerous overdoses and deaths in this community.[4]

## CONCLUSION

For the reasons specified herein, the Court should affirm the Magistrate Judge's Order of Detention and find that no condition or combination of conditions would reasonably assure the safety of the community if the defendant were to be released.

Dated: June 13, 2024, at Rochester, New York.

TRINI E. ROSS
United States Attorney

*s/Robert A. Marangola*

By:  ROBERT A. MARANGOLA
Assistant United States Attorney
Western District of New York
United States Attorney's Office
500 Federal Building
Rochester, NY 14614
(585) 399-3980
robert.marangola@usdoj.gov

---

[4] In his appeal, Jackson points out that the quantities of drugs being sold by the organization were "small", ostensibly in support of his release (Dkt. #120, at 5). However, the government notes that even the smallest dose of fentanyl can be lethal. *See* https://www.dea.gov/resources/facts-about-fentanyl ("Two milligrams of fentanyl can be lethal depending on a person's body size, tolerance and past usage.").